IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THOMAS NEWSOME,

     Plaintiff,

v.                                           No. CV 12-733 MCA/GBW

THE GEO GROUP, INC., et al.,

     Defendants.

## REPORT AND RECOMMENDATIONS

This matter comes before me on Defendants' *Martinez* Report and Motion for Summary Judgment, *doc. 69*, and Plaintiff's Motion to Strike *Martinez* Report, *doc. 77*. Having reviewed these matters, I recommend that the Court grant Defendants' Motion and deny Plaintiff's.

I.     BACKGROUND

On April 15, 2013, Plaintiff filed an amended complaint raising allegations against prison officials at the Guadalupe County Correctional Facility (GCCF). *Doc. 20.* On May 20, 2014, after a majority of the claims had been disposed of on a motion to dismiss, *doc. 52*, the Court ordered Defendants to file a *Martinez* Report to develop a factual and legal basis for assessing Plaintiff's remaining claims of First Amendment retaliation against Defendants Chavez, Rogers, Bradley, Fralick, and Bravo. *Doc. 63.* In that order, the Court provided the following notice:

1

> **THE PARTIES ARE HEREBY GIVEN NOTICE that the *Martinez* Report may be used in deciding whether to grant summary judgment on Plaintiff's claims, whether by motion or *sua sponte*; as such, the parties should submit whatever materials they consider relevant to Plaintiff's claims**.

*Id.* (emphasis in original).  The Court gave Defendants ninety (90) days to file the report and afforded Plaintiff thirty (30) days thereafter to file a response.  *Id.* at 3-4.  The Report was timely filed August 19, 2014.  *Doc. 69*.  Defendants requested that the Court construe the Report as a motion for summary judgment and grant the same.  Plaintiff failed to respond, timely or otherwise, to the substance of the Report.

Plaintiff has, however, made a series of filings in which he challenged the Court's authority to order a *Martinez* Report and moved to strike the Report itself.  First, Plaintiff objected to the Court's ordering a *Martinez* Report on June 5, 2014, which the undersigned overruled on August 7, 2014.  *Docs. 65, 68*.  On the same day the *Martinez* Report was filed, Plaintiff also moved to vacate the order overruling his objections.  *Doc. 70.*  Chief Judge Armijo denied that motion on February 17, 2015.  *Doc. 74.*  Despite this ruling, Plaintiff filed a Motion to Vacate the Order on Motion to Vacate, *doc. 76*, and a Motion to Strike Defendants' *Martinez* Report, *doc. 77*, again challenging the procedural appropriateness of Defendants' filing rather than address the substance of the *Martinez* Report and Motion for Summary Judgment.

As noted above, the undersigned will address Plaintiff's Motion to Strike and Defendants' Motion for Summary Judgment herein.  Should the Court decide that Plaintiff's Motion to Vacate Order on Motion to Vacate should be denied, I recommend

that the Court also deny Plaintiff's Motion to Strike and grant Defendants' Motion for Summary Judgment.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). The court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999).

## II.   UNDISPUTED FACTS[1]

### GCCF'S GRIEVANCE PROCESS

1. At all times relevant to Plaintiff's Amended Complaint, the New Mexico Corrections Department (NMCD) policy for filing and pursuing a grievance at GCCF required an inmate to take the following three sequential steps: (1) submit

---

[1] Because Plaintiff never addressed Defendants' assertions of fact, the Court considers them undisputed for the purpose of this motion. *See* Fed. R. Civ. P. 56(e).

an informal complaint; (2) submit a formal grievance to be considered by the Grievance Officer and the Warden; and (3) if unhappy with the Warden's decision, submit an appeal to the Secretary of Corrections. *Doc. 69*, Ex. F at 1-2; Ex. K at 9-14.[2]

2. At the first step, the inmate is required to "file an informal complaint using the Inmate Informal Complaint Form [] within five (5) calendar days from the date of the incident giving rise to the complaint." *Doc. 69*, Ex. K at 9.

3. At the second step, "[i]f th[e] informal effort fails to resolve the complaint within five working days of receipt of the complaint, the inmate may then file an Inmate Grievance Form," but must do so "within twenty (20) calendar days of the date of the incident giving rise to the complaint." *Id.*

4. Once received, "[t]he Grievance Officer will note the date the grievance was received," and review it "for proper time limits and necessary information. A grievance that is untimely, incomplete or otherwise improperly submitted will be returned to the inmate with an explanation of why it is being returned." *Id.*, Ex. K at 11-12.

5. If accepted, the Grievance Officer will then "conduct an investigation and complete the Grievance Officer's report portion of the Inmate Grievance Form." *Id.*, Ex. K at at 12 (emphasis omitted). The report is to be "delivered to the

---

[2] The page numbers cited in Section II are the numbers reflected at the bottom of each page on the exhibits themselves and not the .pdf page numbers listed in the top right corner of each page.

4

Warden for review within twenty (20) working days from receipt of the inmate's grievance." *Id.*

6. The Warden is to "review the grievance, along with any comments from inmates and staff, and make a decision within fifteen (15) working days of receipt of the grievance by the Warden." *Id.* "Any disposition recommended by the Grievance Officer may be approved, disapproved or modified by the Warden." *Id.*

7. If an inmate has a grievance against the Grievance Officer, "the inmate will send the completed Inmate Grievance Form directly to the Warden. The Warden will appoint a person who is not involved with the matter of the grievance to serve as Grievance Officer for that particular grievance." *Id.*, Ex. K at 10.

8. At the third and final step, if the inmate is not satisfied with the Warden's decision, "the inmate may appeal that decision to the Office of the Secretary of Corrections within seven (7) calendar days of receiving the decision from the Warden." *Id.*, Ex. K at 13.

9. NMCD Policy defines "Exhaustion of Administrative Remedies" as "[t]he completion of the grievance process through the Department level appeal." *Doc. 69*, Ex, K at 2.

10. The steps taken by Plaintiff to exhaust the administrative remedies available to him are outlined in Plaintiff's Grievance File from GCCF, which is attached as

exhibits to Defendants' *Martinez* Report. *Doc. 69*, Ex. F at 2; *see also id.*, Exs. A, B, and L.

**ADMINISTRATIVE STEPS TAKEN BY PLAINTIFF AS TO DEFENDANT CHAVEZ**

11. Plaintiff's Amended Complaint identifies Defendant Chavez as the Supervisor of the GCCF mailroom. *Doc. 20* at 5.

12. On November 29, 2012, Plaintiff completed an Inmate Informal Complaint against "Mail Room Clerk," asserting that the prison was required to pay for all stamps for legal correspondence and had improperly returned legal mail on the grounds that Plaintiff had exceeded the permitted number of letters for which stamps are provided. *Doc. 69* Ex. L at 5.

13. The "Reviewing Staff Member" wrote that the prison provides only two stamps, that Plaintiff had exceeded that limit, and that the issue had been resolved. *Id.* The staff member signed the form on December 7, 2012. *Id.*

14. Plaintiff filed an Inmate Grievance Form regarding this incident. *Id.*, Ex. L at 3. The Grievance Officer indicated that the grievance had been received on December 17, 2012, and accepted it for consideration. *Id.*

15. On January 16, 2013, a grievance report was compiled recommending that Plaintiff's request that GCCF pay for all postage for legal mail be denied. *Id.*, Ex. L at 4. The report explained that the facility would pay for postage for only two letters per week and that Plaintiff was required to pay for postage thereafter. *Id.*

6

16. In the next section of the same form, the "Warden/Designee" concurred in the recommendation and denied Plaintiff's requested relief for this grievance. *Id.* The form was returned to Plaintiff on January 28, 2013. *Id.*

17. Plaintiff took no further administrative steps with regard to his grievance. *Doc. 69*, Exs. A, B, and L.[3]

18. After the initiation of Plaintiff's Informal Complaints against Defendant Chavez, Plaintiff submitted seven requests for public records under the New Mexico Inspection of Public Records Act (IPRA), N.M. STAT. ANN. § 14-2-1 *et seq*. These requests were made between December 18, 2012, and March 15, 2013. *Doc. 69*, Exs. Q, R. Each of these requests was handled by Harrison Wheeler, Esq., GEO Group, Inc.'s Associate Corporate Counsel. *Id.*, Ex. Q.

**PLAINTIFF'S FIRST IPRA REQUEST AND SUBSEQUENT ADMINISTRATIVE STEPS TAKEN BY PLAINTIFF AS TO DEFENDANTS ROGERS AND BRADLEY**

19. Plaintiff's first IPRA request during the relevant time frame was made on December 18, 2012. *Id.*, Ex. R. at 1-5. Plaintiff requested, among other things, Defendant Rogers's job description and Defendants Rogers's and Defendant

---

[3] On December 13, 2012, Plaintiff filed a second Inmate Informal Complaint regarding postage payments against "Mail Room 'Supervisor'" – who has concealed her identity." *Doc. 69*, Ex. L at 7. This Informal Complaint stated that Plaintiff witnessed another inmate have legal mail returned with a note requesting "a debit memo" because that inmate had exceeded his two letters for the week. *Id.*, Ex. L at 6-7. An Inmate Grievance Form regarding the matter was returned to Plaintiff on the grounds (1) that it was not readable and (2) that Plaintiff had failed to indicate his issue. *Id.*, Ex. L at 8. Plaintiff's Grievance File indicates that Plaintiff took no further administrative steps with regard to this grievance, which was, in fact, another inmate's grievance. *Doc. 69*, Exs. A, B, and L.

Chavez's "professional qualifications," including their employment applications, resumes, and education and training.  *Id*.

20. On December 28, 2012, Plaintiff completed an Inmate Informal Complaint concerning Defendant Rogers's alleged retaliation on December 23, 2012, for Plaintiff's December 18, 2012 IPRA request.  *Doc. 69*, Ex. A at 1.

21. The "Reviewing Staff Member" recommended that Plaintiff submit a formal grievance, and explained that the informal complaint "was not received within five days."  *Id.*  The staff member signed the form on January 2, 2013.  *Id.*

22. Plaintiff completed an Inmate Grievance Form regarding the incident.  *Id.*, Ex. A at 3.  The Grievance Officer indicated that the Grievance had been received on January 14, 2013, and returned it to Plaintiff on the grounds that it was untimely. *Id.*

23. Plaintiff's Grievance File indicates that he took no further administrative steps with regard to this incident.  *Doc. 69*, Exs. A, B, and L.

**ADMINISTRATIVE STEPS TAKEN BY PLAINTIFF AS TO DEFENDANT BRADLEY**

24. Plaintiff's Amended Complaint identifies Defendant Bradley as the Education Director at GCCF.  *Doc. 20* at 5.

25. On January 18, 2013, Plaintiff completed two informal complaints against Defendant Bradley for issues that had occurred that same day.  *Doc. 69*, Ex. L at 9, 12.

26. The first informal complaint asserted that Defendant Bradley had ordered
    Defendant Fralick "to remove [and] 'burn' all hard-bound legal materials in the
    'Law' Library" and "replace them with a single Lexus Nexus [sic] computer
    terminal for exclusive legal research" that did not contain any federal statutes.
    *Id.* Ex. L at 9.

27. The second informal complaint objected to the computer being placed in "the
    highest traffic area of the general Library," which allowed "users to 'hog' the
    machine" and allowed other inmates to interfere with Plaintiff's use of the
    computer while he was using it.  *Id.*, Ex. L at 12.

28. Plaintiff did not file formal grievances as to either of the January 18, 2013
    incidents within twenty (20) days of their occurrence.  *Doc. 69*, Exs. A, B, and L.

**PLAINTIFF'S SECOND AND THIRD IPRA REQUEST AND SUBSEQUENT ADMINISTRATIVE
STEPS TAKEN BY PLAINTIFF AS TO DEFENDANT BRADLEY**

29. The second IPRA request was made on January 21, 2013.  *Id.*, Ex. R. at 6-8.  This
    request sought, among other things, records related (1) to any action taken by the
    prison administration with respect to the December 18, 2012 incident involving
    Defendant Rogers, (2) the job descriptions and professional qualifications of
    Defendants Bradley and Fralick, and (3) the closure of the library on January 16,
    2013, and the conversion from hardbound legal materials to a LexisNexis
    computer.  *Id.*

30. The third IPRA request was made on January 27, 2013.  *Id.*, Ex. R at 9-10.  This

request sought, among other things, records related to "'the rules' forbidding use of the LexusNexus [sic] single computer terminal for legal research 'on weekends' . . . ." *Id.*, Ex. R at 9.

31. Plaintiff filed two more informal complaints against Defendant Bradley on February 4, 2013. *Doc. 69*, Ex. L at 16, 20. The first asserted that Defendant Bradley was not qualified to supervise the GCCF Law Library. *Doc. 69*, Ex. L at 16. The second asserted that Defendant Bradley "selected and/or retained [Defendant] Fralick as 'Librarian Coordinator'" even though Defendant Fralick was not qualified for the position. *Id.*, Ex. L at 20.

32. Plaintiff completed two Inmate Grievance Forms regarding these informal complaints. *Id.*, Ex. L at 19, 22. The first formal complaint requested that Defendant Bradley be removed from the Law Library and that the United States Code Annotated be installed on the library computers. *Id.*, Ex. L at 19. The Grievance Officer returned the Grievance as incomplete because "no date of incident [was] indicated." *Id.*

33. The second formal complaint requested that Defendant Fralick no longer have "any authority over the Law Library." *Id.*, Ex. L at 22. The Grievance Officer accepted this grievance for consideration. *Id.*

10

34. On March 22, 2013, a grievance report was compiled, which stated that Plaintiff's request "to have [Defendant] Fralick be removed from any authority over the Law Library has been Denied." *Id.*, Ex. L at 23.

35. In the next section of the same form, the "Warden/Designee" concurred in the recommendation and denied Plaintiff's requested relief for this grievance. *Id.* The form was returned to Plaintiff on April 15, 2013.

36. Plaintiff's Grievance File indicates that Plaintiff took no further administrative steps with regard to these two grievances. *Doc. 69*, Exs. A, B, and L.

**PLAINTIFF'S FOURTH IPRA REQUEST AND SUBSEQUENT ADMINISTRATIVE STEPS TAKEN BY PLAINTIFF AS TO DEFENDANT FRALICK**

37. The fourth request was made on February 5, 2013. *Id.*, Ex. R. at 11-12. This request sought, among other things, records related to (1) GEO's payment of bonuses or shares of profits to Defendants Bravo, Bradley, Fralick, and Rogers, (2) the location of required legal materials at the GCCF Law Library, (3) Defendant Bradley's and Defendant Fralick's "legal education, training, and experience," and (4) dates when Defendant Fralick "conducted training classes in [sic] the American Legal System," the attendees, and the materials used for those trainings. *Id.*

38. On February 12, 2013, Plaintiff completed an Inmate Informal Complaint against "[Defendant] Fralick, 'Library Coordinator'" regarding an incident that occurred on February 7, 2013. Plaintiff's informal complaint stated, "Library Staff [and]

11

inmate assistants are to be in the Library for the full time of scheduled hours—

not doing personal grooming." *Doc. 69*, Ex. B at 1.

39. The "Reviewing Staff Member" recommended that Plaintiff submit a formal

grievance, and explained, "After speaking with [Defendant] Fralick about this

incident he showed me where he signed out at the proper time." *Id.* The staff

member signed the form on February 12, 2013. *Id.*

40. Plaintiff filed an Inmate Grievance Form regarding the incident. *Id.*, Ex. B at 2.

The Grievance Officer indicated that the Grievance had been received on

February 14, 2013, and accepted it for consideration. *Id.*

41. On March 22, 2013, a grievance report was compiled recommending that

Plaintiff's request "to have staff at their post either before or at their scheduled

time . . ." be granted. *Id.*, Ex. B at 3.

42. In the next section of the same form, the "Warden/Designee" concurred in the

recommendation and granted Plaintiff's requested relief for this grievance. *Id.*

The form was returned to Plaintiff on April 15, 2013. *Id.*

43. Plaintiff's Grievance File indicates that Plaintiff took no further administrative

steps with regard to this grievance. *Doc. 69*, Exs. A, B, and L.

**PLAINTIFF'S FIFTH IPRA REQUEST AND SUBSEQUENT ADMINISTRATIVE STEPS TAKEN BY
PLAINTIFF AS TO DEFENDANTS BRAVO AND FRALICK**

44. Plaintiff made his fifth IPRA request on March 1, 2013. *Id.*, Ex. R. at 13-14. This

request sought, among other things, records related to individuals present at the

GCCF Library on February 28, 2013.  *Id.*

45. On March 4, 2013, Plaintiff completed an Inmate Informal Complaint against Defendant Bravo regarding an incident that occurred on February 28, 2013.  *Doc. 69*, Ex. L at 25.  Plaintiff's informal complaint stated, "In retaliation for my freedom of information suit in a federal court . . . Bravo directed, authorized, endorsed, condoned, [and] ratified the conduct of one 'Lt. Eastridge' [and] his accomplices who assaulted me for seeking access to a public record."  *Id*, Ex. L at 25, 28.

46. The "Reviewing Staff Member" recommended that Plaintiff submit a formal grievance, because the complaint was untimely.  *Id.*, Ex. L at 25*.  The staff member signed the form on March 7, 2013.  *Id.*

47. Plaintiff filed an Inmate Grievance Form regarding the incident.  *Id.*, Ex. L at 27. The Grievance Officer indicated that the Grievance had been received on March 14, 2013, and accepted it for consideration.  *Id.*

48. On April 11, 2013, a grievance report was compiled stating that Plaintiff's request "to have [Defendant] Bravo Suspended has been DENIED."  *Id.*, Ex. L at 28.  The report further explained that Plaintiff had been asked "to leave the library due to [his] disruptive behavior by the library coordinator [Defendant] Fralick."  *Id.*  The report continued:

> As you did not follow the directive given to you by [Defendant] Fralick
> and became more disruptive [Defendant] Fralick felt threatened and

called the control center for assistance from security.  Lt. Eastridge who
was in close proximity was the first to respond.  Although you felt
assaulted you were never physically touched but merely ordered to leave
the area and to discontinue your disruptive behavior.  As a result of the
encounter you received and was [sic] later found guilty of two charges for
being disruptive in the library (failure to follow published rules and
regulations) and also failure to program as you were scheduled to be
working in the pod as a pod porter at the time of the encounter library
[sic].

49. In the next section of the same form, the "Warden/Designee" concurred in the

recommendation denied Plaintiff's requested relief for this grievance.  *Id.*  The

form was returned to Plaintiff on April 23, 2013.  *Id.*

50. Plaintiff's Grievance File indicates that Plaintiff took no further administrative

steps with regard to this grievance.  *Doc. 69*, Exs. A, B, and L.

**ADMINISTRATIVE STEPS TAKEN BY PLAINTIFF AS TO DEFENDANT FRALICK**

51. On March 4, 2013, Plaintiff also completed an Inmate Informal Complaint against

"[Defendant] Fralick, 'Library Coordinator'" regarding an incident that occurred

on March 2, 2013.  Plaintiff's informal complaint stated, Defendant Fralick

"violated the mandate to provide library services on a daily basis, including

'weekends.'"  *Doc. 69*, Ex. B at 7 (original emphasis omitted).

52. The "Reviewing Staff Member" recommended that Plaintiff submit a formal

grievance and signed the form on March 8, 2013.  *Id.*

53. Plaintiff filed an Inmate Grievance Form regarding the incident. *Id.*, Ex. B at 8. The Grievance Officer indicated that the Grievance had been received on March 14, 2013, and accepted it for consideration. *Id.*

54. On April 11, 2013, a grievance report was compiled stating that Plaintiff's request "to have [Defendant] Fralick Suspended/demoted has been DENIED." *Id.*, Ex. B at 9. The report further stated that "[Plaintiff's] claim that [Defendant Fralick] is illegally closing the library is without merit," because the policies and standards cited by Plaintiff are "met at GCCF with the library cart, which contains a variety of books and periodicals (library service) which is located in a readily accessible area to the inmate population." *Id.*.

55. In the next section of the same form, the "Warden/Designee" concurred in the recommendation and denied Plaintiff's requested relief for this grievance, stating, "Library access meets national standards and policy." *Id.* The form was returned to Plaintiff on April 23, 2013. *Id.*

56. Plaintiff's Grievance File indicates that Plaintiff took no further administrative steps with regard to this grievance. *Doc. 69*, Exs. A, B, and L.

**PLAINTIFF'S REMAINING IPRA REQUESTS**

57. The sixth request was made on March 4, 2013. *Id.*, Ex. R. at 15-16. This request sought, among other things, records related to GCCF's compliance with policy and standards regarding the availability of library services, "including evenings

'and weekends.'"  *Id*. Ex. R. at 15.

58. The seventh and final request was made on March 15, 2013.  *Id*., Ex. R. at 17-18.

This request sought, among other things, records related to (1) "each 'approval of

the N.M. Corrections Department' (NMCD) for GEO's appointments as warden

of: . . . [Defendant] Bravo, at GCCF," (2) records relating to closure of the library

on weekends, and (3) steps taken to complete his Interlibrary Loan (ILL) requests

made on February 6, 2013, and March 4, 2013, and (4) "the signed 'Policy [and]

Procedures Acknowledgement" form for Defendants Bravo, Rogers, Bradley,

Fralick, and Chavez.  *Id.*

## IV.   ANALYSIS

Plaintiff's Amended Complaint avers that Defendants retaliated against him

because of the numerous IPRA requests he made while at GCCF.  Defendants' Motion

for Summary Judgment argues (1) that Plaintiff failed to exhaust his administrative

remedies regarding his claims of retaliation, and (2) in the alternative, that he cannot

demonstrate adverse action or retaliatory motive, both of which are required to succeed

on a retaliation claim.  *Doc. 69* at 11-28.  Because Plaintiff failed to exhaust the available

administrative remedies as to all of his remaining claims, the undersigned recommends

GRANTING Defendants' *Martinez* Report and Motion for Summary Judgment.

**A. Plaintiff failed to exhaust the available administrative remedies as to all Defendants**

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust all available administrative remedies in suits, like Plaintiff's, brought under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a) (1996) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").  Thus, before a court can proceed to the merits of a complaint, it must establish that the plaintiff has properly exhausted all of his claims.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citations omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 88.  In utilizing grievance procedures, a prisoner must "provide[] prison officials with enough information to investigate and address the inmate's complaint internally."  *Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242 (10th Cir. 2008).  Furthermore, grievances

must be related to the claims brought in court.  *Id*. at 1282 ("[a] showing of exhaustion . .

. is dependent upon insight into the administrative claim and its relationship with the

federal suit.").

1. *Plaintiff did not pursue any administrative recourse against Defendants Chavez, Bradley, or Fralick for what he now asserts was retaliatory conduct*

Plaintiff's grievances against Defendants Chavez, Bradley, and Fralick do not

assert that they retaliated against him because of his IPRA requests.  *Doc. 69*, Ex. A at 1;

Ex. B at 1, 7; Ex. L at 5, 9, 12, 16, 20, and 25.  Instead, they levy complaints about prison

conditions generally.  *See, e.g, id.*, Ex. L at 3 (complaint against Defendant Chavez about

postage), 9 (complaint against Defendant Bradley about removing books from library);

Ex. B at 8 (complaint against Defendant Fralick for closing library on weekends).

Because Plaintiff did not include allegations of retaliatory conduct in either the informal

and formal complaints against these Defendants, prison officials were not afforded the

requisite opportunity to address any such allegations.  *Kikumura,* 461 F.3d at 1285.

Nor should these complaints be liberally construed as being tangentially related

to allegations of retaliation because Plaintiff raised grievances against other Defendants

explicitly alleging retaliation.  *Doc. 69*, Ex. A at 1 (raising retaliatory allegations against

Defendant Rogers); Ex. L at 25 (same as to Defendant Bravo).  Even assuming Plaintiff

intended them to be, prison officials seeking to address Plaintiff's grievances cannot be

expected to read his mind to discern an allegation of perceived retaliatory conduct.

Accordingly, Plaintiff failed to pursue, let alone exhaust, administrative remedies

against Defendants Chavez, Bradley, or Fralick for what he now claims to be retaliatory

conduct.  As a result, his claims as to these Defendants should be dismissed with

prejudice.  *Hinzo v. N.M. Corr. Dep't*, 558 F. App'x 790, 793 n. 2 (10th Cir. 2014)

>   2.  *Plaintiff failed to exhaust the administrative remedies available to him against Defendants Rogers and Bravo*

As noted above, "[p]roper exhaustion demands compliance with an agency's

deadlines and other critical procedural rules . . . ."  *Woodford*, 548 U.S. at 88.  NMCD

regulations require prisoners to file a formal complaint "within twenty (20) calendar

days of the date of the incident giving rise to the complaint."  *Id.*, Ex. K at 9.  Grievance

Officers are to "note the date the grievance was received," and review it "for proper

time limits and necessary information.  A grievance that is untimely, incomplete or

otherwise improperly submitted will be returned to the inmate with an explanation of

why it is being returned."  *Id.*, Ex. K at 11-12.  Finally, after a decision is rendered on a

formal grievance, prison regulations dictate that full exhaustion requires completion of

"the grievance process through the Department level appeal."  *Doc. 69*, Ex, K at 2.  This

requires appealing a decision to the Secretary of Corrections.  *Id.*, Ex. K at 13.

As to Defendant Rogers, Plaintiff failed to pursue his grievance in a timely

manner.  Plaintiff's grievance against Defendant Rogers alleges he retaliated against

Plaintiff on December 23, 2012.  *Id.*, Ex. A at 3.  Plaintiff was, therefore, required to

submit a formal grievance for this complaint by January 12, 2013.  The "Date Received

by Grievance Officer," however, was January 14, 2013, which is twenty-two (22) days

after the date of the incident. *Id.* Thus, Plaintiff failed to comply with set procedures

for raising grievances. As a result, he is precluded from bringing suit in federal court.

*Woodford*, 548 U.S. at 83 (holding "untimely or otherwise procedurally defective

administrative grievance or appeal" does not meet PLRA's exhaustion requirement); *see*

*also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[T]he doctrine of

substantial compliance does not apply" to PLRA's exhaustion requirement).

As to Defendant Bravo, Plaintiff failed to complete "the grievance process

through the Department level appeal." *Doc. 69*, Ex, K at 2. Though Plaintiff timely filed

a grievance against Defendant Bravo, he failed to appeal the decision rendered to the

Secretary of Corrections. *Id.*, Exs. A, B, and L. Thus, he did not properly exhaust his

administrative remedies regarding his allegation of retaliation against Defendant Bravo.

*Jernigan*, 304 F.3d at 1032 ("An inmate who begins the grievance process but does not

complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust

his administrative remedies."). As a result, he is precluded from bringing suit.

Because Plaintiff failed to exhaust his administrative remedies against

Defendants Rogers and Bravo, his suit against them should be dismissed with

prejudice. *Hinzo,* 558 F. App'x at 793 n. 2.

## V.   OTHER FILINGS

The Court should deny Plaintiff's Motion to Strike. In the Motion, Plaintiff

asserts that Defendants' *Martinez* Report "must be stricken in its entirety for violation of

Fed. R. Civ. P. 56(c) and D.N.M. LR-Civ. 10.5, 10.6, and 56.1(b)." *Doc. 77* at 1.  Assuming

*arguendo* that Plaintiff's assertions of nonconformity with these rules are correct, his

assertion that Defendants' *Martinez* Report "must" therefore be stricken is not.  To

begin, Federal Rule of Civil Procedure 56(c) requires a party to support factual positions

in a motion for summary judgment by "citing to particular parts of materials in the

record . . . ."  The rules, however, do not require a court to strike a nonconforming

document.  Rule 56(c)(3) "Materials Not Cited" states, "The court need consider only

the cited materials, but it may consider other materials in the record."  The fact that a

court can consider evidence not explicitly highlighted and cited by counsel undermines

Plaintiff's assertion that a failure to properly cite to the record requires the motion to be

stricken.  Furthermore, Rule 56(e) "Failing to Properly Support or Address a Fact," lists

the available remedies for a party's "fail[ure] to properly support an assertion of fact,"

and leaves the decision to afford any such remedy within the court's discretion.  Fed. R.

Civ. P. 56(e) (providing that the court "may" provide any of the listed remedies).

Glaringly absent from the listed remedies is a mandate requiring the Court to strike the

motion.

      The same is true for the Local Rules.  Local Rule 10.3 "Filing of Non-Conforming

Documents," establishes that, upon notice of nonconformity, "[f]ailure to remedy a

deficiency or to show good cause for non-compliance within forty-five (45) days from

the date of notice may result in the striking of the document . . . ."  D.N.M. LR-Civ. 10.3.

As with the Federal Rules, the term "may" dictates that the decision to strike nonconforming documents is within the discretion of the Court.  Furthermore, neither Local Rule 7, which sets forth rules for motions, nor Local Rule 56.1, which sets forth summary judgment procedures, requires the Court to strike a motion that does not conform to the requirements contained in those rules.  *See* D.N.M. LR-Civ. 7; 56.1. Further still, the Local Rules "may be waived by a Judge to avoid injustice."  D.N.M. LR-Civ. 1.7.

The undersigned, without delineating page limits, ordered Defendants to file a *Martinez* Report and permitted them to concurrently file a motion for summary judgment.  Assuming nonconformity, Defendants' *Martinez* Report and Motion for Summary Judgment is not, as Plaintiff suggests, so "mingled, mixed, and conglomerated, like a Connecticut chowder," as to have prevented Plaintiff from providing a meaningful response.  *Doc. 77* at 2 (quoting Archer Taylor & Bartlett J. Whiting, *American Proverbs and Proverbial Phrases, 1820-1880,* at 69 (1958)).  Requiring Defendants to resubmit this filing to conform would place form over substance and require the Court to further indulge Plaintiff's apparent reluctance to address the merits of his claim.  *See, e.g., Doc. 76* Motion to Vacate Order on Motion to Vacate.  Because I conclude that Plaintiff was not prejudiced by the alleged nonconformities in Defendants' filing at the outset, and especially since the critical facts on which his claim

22

hinges have been set forth in this Report and Recommendations, I recommend that the Court deny Plaintiff's Motion to Strike. *Doc. 77.*

**VI.    CONCLUSION**

The Supreme Court has interpreted the PLRA as requiring prisoners to exhaust all administrative remedies for their grievances in accordance with prison procedures before they may bring suit in federal court. *Woodford*, 548 U.S. at 83. Because Plaintiff failed to levy grievances alleging retaliation against Defendants Chavez, Bradley, and Fralick, and did not pursue his grievances against Defendants Rogers and Bravo through the final level of administrative review, I recommend that the Court GRANT Defendants' Motion for Summary Judgment. *Doc. 69.* For the reasons set forth above, I further recommend that the Court DENY Plaintiff's Motion to Strike. *Doc. 77.*

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**