IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THOMAS NEWSOME,

    Plaintiff,

v.                                                    No. CV 12-733 MCA/GBW

THE GEO GROUP, INC., *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on (1) Plaintiff's Motion to Vacate (*doc. 76*) the Court's order denying his first Motion to Vacate (*doc. 74*); (2) Defendants' *Martinez* Report, in which Defendants move for summary judgment (*doc. 69*); (3) Plaintiff's Motion to Strike the *Martinez* Report (*doc. 77*); and (4) Plaintiff's Motion to Strike Bad Faith Affidavits attached to the *Martinez* Report (*doc. 85*).  The Magistrate Judge entered Proposed Findings and Recommend Disposition (PFRD) addressing Defendants' moving for summary judgment in the *Martinez* Report and Plaintiff's Motion to Strike the *Martinez* Report in its entirety.  *Doc. 82.*  Plaintiff timely filed objections to the PFRD (*doc. 86*).  Being fully advised, the Court will overrule the objections, adopt the PFRD in part, and grant Defendants' request for summary judgment (*doc. 69*).

I.    STANDARD OF REVIEW

This case was referred to Magistrate Judge Wormuth pursuant to Title 28 U.S.C.

§ 636(b)(1)(B), (b)(3), and *Virginia Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849

(10th Cir. 1990). *Doc. 3*.  Two of the matters presently before the Court were addressed

in the Magistrate Judge's PFRD.  When resolving objections to a magistrate judge's

PFRD, "[t]he district judge must determine de novo any part of the magistrate judge's

disposition that has been properly objected to.  The district judge may accept, reject, or

modify the recommended disposition; receive further evidence; or return the matter to

the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  The Tenth Circuit has

held "that a party's objections to the magistrate judge's report and recommendation

must be both timely and specific to preserve an issue for de novo review by the district

court or for appellate review."  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057,

1060 (10th Cir. 1996).   "Issues raised for the first time in objections to the magistrate

judge's recommendation are deemed waived."  *Marshall v. Chater*, 75 F.3d 1421, 1426

(10th Cir. 1996).

II.    PROCEDURAL BACKGROUND

Plaintiff initiated this action on July 5, 2012.  *Doc. 1*.  Most of his claims were

dismissed after the Court adopted the Magistrate Judge's earlier PFRD recommending

that Defendants' Motion to Dismiss be granted.  *Docs. 20*, *23*, *40*, *42*, *52*.  Thereafter, on

May 20, 2014, the Magistrate Judge ordered Defendants to produce a *Martinez* Report

regarding the incidents underlying Plaintiff's remaining claims.  *Doc. 63*.  The Order to

File a *Martinez* Report included the following disclaimer:

> **THE PARTIES ARE HEREBY GIVEN NOTICE that the *Martinez* Report**
> **may be used in deciding whether to grant summary judgment on**
> **Plaintiff's claims, whether by motion or *sua sponte*; as such the parties**
> **should submit whatever materials they consider relevant to Plaintiff's**
> **claims.**

*Id.* at 5 (emphasis in original).  The order also notified Plaintiff that his response to the

*Martinez* Report must be filed within thirty days of the Report's filing.  *Id*. at 4.

On June 5, 2014, before the *Martinez* Report was filed, Plaintiff objected to the

Order to File a *Martinez* Report, asserting that the Prison Litigation Reform Act (PLRA)

superseded the practice of using *Martinez* Reports.  *Doc. 65*.  The Magistrate Judge

overruled his objections on August 7, 2014.  *Doc. 68*.  On August 19, 2014, the *Martinez*

Report, in which Defendants moved for summary judgment, was filed.  *Doc. 69*.  Thus,

Plaintiff's deadline to respond to the *Martinez* Report and motion for summary

judgment was September 18, 2014.  On the same day the *Martinez* Report was filed,

however, Plaintiff again challenged the filing of the *Martinez* Report by moving to

vacate the order overruling his objections to the Order to File a *Martinez* Report.  *Doc.

70*.  Plaintiff did not, however, seek an extension of time to respond to the *Martinez*

Report at that time.

On February 17, 2015, the Court denied Plaintiff's Motion to Vacate the Order.

*Doc. 74*.  Notwithstanding the Court's rejection of his attacks on the *Martinez* Report,

3

Plaintiff again refused to file a substantive response to the Report.  Instead, on March 9, 2015, Plaintiff filed a motion to vacate the order denying his previous motion to vacate. *Doc. 76*.  Plaintiff also filed a Motion to Strike the *Martinez* Report the same day.  *Doc. 77.*  He again failed to request an extension of time to respond to the substance of the Report.

More than a month after Plaintiff's third and fourth attempts to strike the *Martinez* Report *(docs. 76*, 77), and more than eight months since the *Martinez* Report was filed, the Magistrate Judge entered a PFRD addressing Plaintiff's Motion to Strike (*doc. 77*) and Defendants' motion for summary judgment (*doc. 69*).  *Doc. 82.*  The PFRD did not address Plaintiff's Motion to Vacate the Order on Motion to Vacate.  *Doc. 76.* The Magistrate Judge recommended that, if the Court deemed it appropriate to deny Plaintiff's second Motion to Vacate (*doc. 76*) and also agreed that Plaintiff's Motion to Strike (*doc. 77*) should be denied, the Court should grant Defendants' motion for summary judgment and dismiss Plaintiff's claims of First Amendment retaliation against Defendants Chavez, Rogers, Bradley, Fralick, and Bravo, which are the sole remaining claims.  *Doc. 82.*

Because Plaintiff had not addressed the substance of the *Martinez* Report in any of his filings, the Magistrate Judge adopted the facts as set forth in that Report.  *Doc. 82* at 3 n. 1.  Based on those facts, the Magistrate Judge concluded that "Plaintiff failed to levy grievances alleging retaliation against Defendants Chavez, Bradley, and Fralick,

and did not pursue his grievances against Defendants Rogers and Bravo through the final level of administrative review." *Id.* at 23.  The Magistrate Judge further concluded that Plaintiff had therefore failed to exhaust his administrative remedies as required by the PLRA.  *Id.*

Upon Plaintiff's motion, the Magistrate Judge granted Plaintiff an extension of time and an increased number of pages within which to file his objections to the PFRD. *Doc. 84*.  On July 13, 2015, Plaintiff filed his objections to the PFRD, as well as a motion to strike affidavits that had been attached to the *Martinez* Report.  *Docs. 85, 86*.

Thus, the matters presently before the Court are (1) Plaintiff's Motion to Vacate the Order on Motion to Vacate (*doc. 76*); (2) Plaintiff's Objections (*doc. 86*) to the Magistrate Judge's PFRD (*doc. 82*) recommending that the Court deny Plaintiff's Motion to Strike the *Martinez* Report (*doc. 77*) and grant Defendants' request for summary judgment (*doc. 69*); and (3) Plaintiff's Motion to Strike Bad Faith Affidavits (*doc. 85*).

### III.   MOTION TO VACATE ORDER DENYING MOTION TO VACATE (*DOC. 76*)

As noted above, Plaintiff objected to the Magistrate Judge ordering a *Martinez* Report (*doc. 65*), the Magistrate Judge issued an order overruling those objections (*doc. 68*), and the Court refused to vacate that order (*docs. 70, 74*).   While the instant motion is titled "Motion to Vacate Doc. 74," Plaintiff's arguments do not address "Doc. 74," which is the Court's Memorandum Opinion and Order refusing to vacate the order requiring Defendants to file a *Martinez* Report.  *Doc. 74*.  Instead, Plaintiff's arguments

in this Motion to Vacate are directed at what he perceives to be the Magistrate Judge's ruling on earlier dispositive matters.  *Doc. 76*.   As such, the Court will not reconsider its previous ruling in the previous order denying the first Motion to Vacate.  *Doc. 74*.  Instead, the Court will consider the second Motion to Vacate (*doc. 76*) as objecting to the dispositive rulings that have occurred in this case.

Plaintiff argues that "Prisoner civil cases may not be assigned to an Article II judicial officer to preside over all 'dispositive motions, evidentiary hearings and trial.'"  *Id.* at 1 (emphasis in original).  To support this assertion, Plaintiff cites to the local rule that sets forth the ways in which cases are assigned to Magistrate Judges and District Judges and the ability of parties to consent to having a Magistrate Judge act as a presiding judge.  D.N.M.LR-Civ. 73.1(a)-(b).  Plaintiff's reliance, however, is misplaced.  While the rule provides for how cases are *assigned*, it does not speak to the manner in which cases may be *referred* by a District Judge to a Magistrate Judge.  The latter is governed by 28 U.S.C. § 636.

Under 28 U.S.C. § 636(b)(1)(A)-(B), a district judge "may . . . designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, . . . of any motion excepted in subparagraph (A) [which includes motions to dismiss, motions for judgment on the pleadings, and motions for summary judgment] . . . and of prisoner petitions challenging conditions of confinement."  The

6

Supreme Court has held that nonconsensual referrals under 28 U.S.C. § 636(b)(1)(B) are permitted in "cases alleging a specific episode of unconstitutional conduct by prison administrators" as well as "challenges to ongoing prison conditions." *McCarthy v. Bronson*, 500 U.S. 136, 138 (1991).  Thus, the Court's referral of this case, which alleges episodes of unconstitutional conduct by prison administrators, to the Magistrate Judge was and is appropriate.

Moreover, the required procedures that accompany a referral under 28 U.S.C. § 636 have been followed in this case.  Under 28 U.S.C. § 636(b)(1)(C), the magistrate judge is required to file proposed findings and recommendations for matters referred under 28 U.S.C. § 636(b)(1)(B), and the parties must thereafter be afforded fourteen days to "serve and file written objections."  After the time period for objections lapses,

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b).  Including the current PFRD, there have been three dispositive matters in this case that have been addressed by the Magistrate Judge: (1) The GEO Group, Inc.'s Motion to Dismiss First Amended Complaint (*doc. 23*); (2) Plaintiff's Motion for Judgment on the Pleadings (*doc. 54*); and (3) Defendants' request for summary judgment in their *Martinez* Report (*doc. 69*).  The first two matters have been ruled on in accordance with the above provisions, with the District Judge making the

final ruling.  *Docs. 52, 59*.  The final dispositive issue is presently before the Court.  As such, Plaintiff's assertion that the "Article II judicial officer," i.e., the Magistrate Judge, has disposed of some of Plaintiff's claims and has made "dispositive rulings on 'evidence'" is flatly incorrect.  *Doc. 74* at 2.

Finally, while the parties' consent is required for the Magistrate Judge to actually render final dispositions not subject to review by a district judge, such consent is not required for a magistrate judge to make proposed findings and recommended dispositions as have been made in this case.  28 U.S.C. § 636; *McCarthy*, 500 U.S. at 138 (holding that magistrate judges can issue proposed findings and recommendations in *nonconsensual* cases in which a prisoner alleges unconstitutional conduct by prison administrators).  For the above reasons, Plaintiff's Motion to Vacate Doc. 74 (*doc. 76*) is denied.

## IV.   MOTION TO STRIKE DEFENDANTS' MARTINEZ REPORT (*DOC. 77*)

Having determined that the dispositive rulings in this case should not be vacated, the Court turns to whether the *Martinez* Report should be stricken in its entirety.  This matter was addressed in the Magistrate Judge's PFRD.   The Magistrate Judge stated that the procedural defects Plaintiff complained of did not mandate that the Court strike the Report.  *Doc. 82*.  Plaintiff's objections assert only that "[b]y simultaneously issuing a preliminary ruling on plaintiff's Motion to Strike (docs. 77, 81) within the body of the 'R&R' itself, the article II judicial officer exceeded his jurisdiction

8

when he ignored and prohibited plaintiff's evidence before the district judge had a chance to act." *Doc. 86* at 26. Since the Magistrate Judge's act of issuing a preliminary ruling within the Report and Recommendations is appropriate in this case, the Magistrate Judge did not exceed his jurisdiction.

For the reasons set forth in the immediately preceding section, the Magistrate Judge did not exceed his authority by addressing the Motion to Strike (*doc. 77*) in the PFRD. Most importantly, the Court agrees with the Magistrate Judge's conclusion that even if Defendants' *Martinez* Report contained the procedural defects identified by Plaintiff, such defects did not require striking the Report. Furthermore, granting the motion only serves to further delay this case. Accordingly, the Court will adopt the Magistrate Judge's recommendation for this matter.

## V.   MOTION TO STRIKE BAD FAITH AFFIDAVITS (*DOC. 85*)

Having determined that the *Martinez* Report should not be stricken in its entirety, the next question is whether specific portions should be. Since the motion was filed after the PFRD was entered, this issue is before the Court for initial review. Plaintiff's motion seeks to strike the affidavits of Defendant Bravo, Paula Biamont, and Colleen McCarney pursuant to Federal Rule of Civil Procedure 56(h). *Doc. 85*. Under Rule 56(h), after affording notice and a reasonable time to respond, the Court may sanction a party or attorney, if the Court is "satisfied that an affidavit or declaration under [Rule 56] [was] submitted in bad faith." Fed. R. Civ. P. 56(h). The Court may

strike affidavits it considers submitted in bad faith as a sanction.  *Bausman v. Interstate Brands. Corp.*, 50 F.Supp.2d 1028, 1030 (D. Kan. April 30, 1999) *rev'd on other grounds*, 252 F.3d 1111 (10th Cir. 2001).[1]

Generally, to impose such a sanction, the Court should be satisfied that the affidavit is directly contradicted by the record, that the affidavit submitted for an improper purpose, and that the opposing party suffered prejudice.  *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 349 (5th Cir. 2007) (affirming denial of sanctions for alleged bad faith where inconsistencies between affidavit and affiant's earlier deposition testimony were "indirect"); *Bausman*, 50 F.Supp.2d at 1030 (concluding that affidavit was not submitted "to create sham issue of fact," where "averment [in affidavit] [did] not present an irreconcilable conflict with [affiant's] deposition"); *Faberge, Inc. v. Saxony Products, Inc.*, 605 F.2d 426, 429 (9th Cir.1979) (refusing to award sanctions where court did not rely on allegedly bad faith affidavit).  The Court addresses the three allegedly impugned affidavits in turn.

### A.  Purportedly Incorrect or Improper Statements

Plaintiff's allegations of bad faith fall short for most of the statements because the statements are neither incorrect nor improper.  Plaintiff asserts, for example, that

---

[1] *Bausman* was applying the predecessor to Rule 56(h), which was Rule 56(g).  Fed. R. Civ. P. 56, Advisory Committee Notes for 2010 Amendment (Rule 56 was amended in 2010 so that "[s]ubdivision (h) carries forward former subdivision (g) with three changes.").  The changes to Rule 56(g) did not alter the requirement that the Court find an affidavit to have been submitted in bad faith before issuing sanctions, so pre-amendment cases may be relied on.  *Id.* (three changes to subdivision (g) were (1) sanctions are discretionary, not mandatory; (2) notice and a reasonable time to respond prior to sanctions was added; and (3) the authority to enter sanctions other than for fees and contempt was recognized).

Defendant Bravo represented that "Rogers Grievance [was] 'untimely'" and that this statement is incorrect because the grievance "was timely." *Doc. 77* at 9. Defendant Bravo's actual assertion is the grievance against Defendant Rogers "was returned as untimely." *Doc. 79*, Ex. F at 2. This grievance was, in fact, returned as untimely. *Doc. 69*, Ex. A at 3 (grievance form against Defendant Rogers with check marks indicating Plaintiff's "grievance is being returned to [him] because . . .[t]he grievance is not timely"). As such, this statement is not incorrect and, therefore, was not submitted in bad faith.

Plaintiff also asserts that Defendant Bravo's statement that he was "'not aware' of Rogers incident" is incorrect because Defendant Bravo "was circumstantially aware of the Rogers assault." *Doc. 85* at 10; *doc. 20* at 64-65, 67, 96, & 114) (alleging Defendant Bravo knew of Plaintiff's IPRA requests because they were addressed to the "in 'c/o' [D]efendant Bravo," Defendant Rogers became aware of the IPRA requests, and that Plaintiff had made a request for "each record of the action taken by [D]efendant Bravo, or any other GEO/GCCF/NMCD official concerning the screaming use of obscene or verbally abusive language and physical threat made against [Plaintiff] by [D]efendant Rogers . . . ."). Defendant Bravo's awareness is predicated on Plaintiff's assumption that Defendant Bravo was aware of Plaintiff's IPRA requests. Nothing in the evidence provided by Plaintiff demonstrates as much. To the contrary, Plaintiff's Amended Complaint makes clear that Harrison Wheeler responded to Plaintiff's IPRA requests

and that the records requested could very well have been obtained without Defendant Bravo's knowledge. *See, e.g., doc. 20* at 54, 62, 67, 70, 74, 75 79, & 84 (outlining Plaintiff's IPRA requests and Harrison Wheeler's responses to them). As such, Plaintiff's circumstantial evidence is too indirect to establish that Defendant Bravo's assertion was inaccurate, let alone made in bad faith. *Bausman*, 50 F.Supp.2d at 1030.

Plaintiff's assertions are likewise insufficient to establish that Defendants' failed to provide transfer records as required by NMCD regulations. The regulations to which Plaintiff cites as requiring extensive record keeping do not appear to apply to "Lateral Transfers," like Plaintiff's. *Infra* Part VI.C.1.c . The provision regarding lateral transfers says nothing about what records, if any, must be kept. New Mexico Corrections Department Policy No. CD-080105(A)(6) (Hereinafter "CD") ("Lateral Transfers: Lateral transfers of inmates may be made any time to serve the interests of the NMCD. The Classification Bureau must approve a lateral transfer.").[2] Thus, Defendant Bravo's statement that he does not recall why Plaintiff was transferred is not inconsistent with the record. Nor are the statements of Colleen McCarney and Paula Biamont that it is not uncommon for transfer records to lack explanations.

---

[2] Plaintiff relies extensively on these and other prison records. However, the versions relied on by Plaintiff appear to have been updated since the relevant time period. Accordingly, the Court obtained current versions of these prison policies and takes judicial notice thereof. *Grynberg v. Koch Gateway Pipeline Col*, 390 F.3d 1276, 1279 n. 1 (10th Cir. 2004) ("[T]he court is permitted to take judicial notice of . . . facts which are a matter of public record."). The portion on which the Court relies that is not cited to in Plaintiff's Objections is attached hereto as Exhibit A.

Plaintiff also asserts that Defendant Bravo's assertions that he is "'[f]amiliar' with policies" and that he "'[d]o[es] not and cannot' make penological decisions in retaliation" are each conclusory.  *Doc. 77* at 9-10.  Even assuming the statements to be conclusory, it does not mean that they were rendered in bad faith and should therefore be stricken.  Memorandum Opinion and Order at 2, *Carl Kelley Construction LLC v. WTNM Tech, Ltd.*, 1:08-cv-00379-JB-RLP (D.N.M. January 1, 2009), ECF No. 25 (denying motion to strike affidavit containing conclusory statements and legal conclusions because the court can disregard such conclusions).

For the above reasons, the Court will not strike the statements identified above or various other statements in the affidavits of Defendant Bravo, Colleen McCarney, and Paula Biamont.  *E.g., doc. 77* at 9-10, ¶¶ 27, 28, 30-33, 35-38, 40, & 41.

### B.  Missing Records

Plaintiff also asserts that the records of his grievance file are not complete because the file is missing certain forms and portions of forms.  *Doc. 85* at 9-10.  Plaintiff states, for example, that he obtained records of two grievance appeals through IPRA requests, one regarding Defendant Chavez and one regarding Defendant Fralick, that are not in the *Martinez* Report.  *Doc. 85* at 28.  While the absence of some records does conflict with Defendant Bravo's statement that the *Martinez* Report contains a complete record of Plaintiff's grievance file at GCCF, it does not establish that he acted in bad faith in making that statement.  Given the size of the file, that it is substantially

complete, and that they do not appear to have been omitted for an improper purpose, the Court declines to strike the affidavit. *See Barber v. Hallmark Cards, Inc.*, No. 93-4087-SAC, 1994 WL 568872, at *5-6 (D. Kan. Sept. 14, 1994) (striking affidavit paragraph where it was directly refuted by affiant's deposition and constituted "a sham attempt to create an issue of fact."). Moreover, Plaintiff was not prejudiced by the missing records because they do not affect the Court's grievance analysis. *See infra* Part VI.B.1. (concluding that even if Plaintiff pursued his grievances against Defendants Chavez and Fralick through appeal, his claims would fail nonetheless because the claims against those Defendants did not pertain to retaliation).

## VI.   MOTION FOR SUMMARY JUDGMENT

The Magistrate Judge concluded that Plaintiff had failed to exhaust his administrative remedies as to all Defendants. The Magistrate Judge, therefore, did not reach Defendants' second basis for granting summary judgment: the absence of an adverse action or retaliatory motive. *Doc. 69* at 13. While the Court agrees that a majority of Plaintiff's claims were not exhausted, Plaintiff has demonstrated that some of those claims were non-grievable. As such, the Court will address the merits of Defendants' second argument for certain claims against Defendants Bravo, Fralick, and Rogers.

As an initial matter, the Court will consider whether Plaintiff was required, or has otherwise had an opportunity to respond, to Defendants' moving for summary

judgment in the *Martinez* Report.  Plaintiff first asserts that he was not required to respond to the *Martinez* Report, notwithstanding the Magistrate Judge's ordering him to do so, because there were pending motions attacking the *Martinez* Report that had to be ruled on by the district judge.  *Doc. 94* at 4.  Plaintiff cites to *Dolese v. U.S.*, 541 F.2d 853 (10th Cir. 1976), as standing for the proposition that "[t]here is no waiver of the requirements of the summary judgment rule where counsel made a 'continuing protest' after the trial judge indicated to all concerned that he was going to grant summary judgment.'"  *Doc. 94* at 3.  However, *Dolese* reversed the trial court because it had failed to comply with the timelines set forth in Rule 56 (as it was in 1979) and the adversely affected party had not waived those requirements.  *Dolese*, 541 F.2d at 855.  *Dolese* did not establish the ability of a party to unilaterally alter or revoke a deadline simply through protest.

Plaintiff's reliance on *Bagwell v. Brannum*, 533 F.Supp.362 (N.D. Ga. 1982), is similarly unavailing.  There, the district court addressed a motion to remand before addressing a motion for summary judgment even though the motion for summary judgment was filed first.  *Bagwell*, 533 F.Supp. at 363.  A motion to remand raises questions about whether a case is properly before a court.  There was no question that this case was properly before the court and, at the very least, there should have been no question about the Court's proceeding with the *Martinez* Report after February 17, 2015,

when both judges had ruled against Plaintiff.  Plaintiff's continued recalcitrance

thereafter was to his detriment.

Furthermore, his assertions that he risked waiving arguments over defects in the

*Martinez* Report and that the Magistrate Judge granted him an extension of time to

respond to the *Martinez* Report are without merit.  An attack on any alleged defects in

the *Martinez* Report could have been made concurrently with a response to the merits.

Finally, Plaintiff's assertion that the Magistrate Judge "partially granted [P]laintiff's

motion for an enlarged brief to respond to the 'Martinez' Report and the Report and

Recommendations" is disingenuous.   The caption for the motion reads, "Plaintiff's

Motion for Extension of Time and 'Undelineated' Pages in Response to Doc. 82" and the

first sentence states it is requesting an extension "to respond to the 'Report and

Recommendation' in Document 82."  *Doc. 83*.  No extension of time to respond to the

*Martinez* Report was granted.  *Doc. 84*.

In sum, Plaintiff was ordered to respond to the *Martinez* Report and any

accompanying motion for summary judgment by September 18, 2014.  He has had

ample time to respond to the contentions in the *Martinez* Report and has opted instead

to repeatedly attack the *Martinez* Report on procedural grounds despite being

repeatedly rebuffed by the Court.  It is entirely proper for the Court to address the

merits of the entire *Martinez* Report at this time.  In doing so, the Court will consider the

PFRD (*doc. 82*), Plaintiff's Objections (*doc. 86*), his various other motions (*docs. 76, 77, &*

*85*) and the attendant briefing (*docs. 79, 81, 88, 89, 94, & 94*), in addressing the merits of

Defendants' *Martinez* Report.  Ultimately, the Court concludes that Defendants' are

entitled to summary judgment for the reasons set forth below.

### A.  Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support

the assertion by . . . citing to particular parts of materials in the record . . . ."  Fed. R. Civ.

P. 56(c)(1)(A). "An issue is 'genuine' if there is sufficient evidence on each side so that a

rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if

under the substantive law it is essential to the proper disposition of the claim."  *Thom v.*

*Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).

The court must resolve all reasonable inferences and doubts in favor of the non-moving

party, and construe all evidence in the light most favorable to the non-moving party.

*See Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999).

Summary judgment may be reached on the "pleadings, depositions, answers to

interrogatories, and admissions on file" alone.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986).  The moving party has the burden of demonstrating the absence of a genuine

issue of material fact.  *Id.* at 323.  Once the movant meets this burden, Rule 56(c)

requires the non-moving party to designate specific facts showing that there is a

genuine issue for trial.  *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).  The opposing party must present more than conjecture and conclusory statements to defeat a summary judgment motion.  *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009).

The purpose of a *Martinez* Report is to "develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  "On summary judgment, a *Martinez* report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence."  *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir.1992).  A plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and is sworn under penalty of perjury. *Hall*, 935 F.2d at 1111.  A court may not rely on a *Martinez* report to resolve material disputed facts where it is in conflict with pleadings or affidavits, nor can material factual disputes be resolved based on conflicting affidavits.  *Id.* at 1109, 1111.  A factual dispute exists even when the plaintiff's factual allegations in conflict with the *Martinez* Report are less specific or well-documented than the factual findings in the *Martinez* Report.  *Id.* at 1109.

The Court is mindful that, when evaluating the pleadings of a party proceeding *pro se*, a court must liberally construe them and should hold them to a less stringent standard than would be applied to the pleadings of a represented party.  *Hall v. Bellmon*,

935 F.3d 1106, 1110 (10th Cir. 1991).  A court is not required, however, to assume the

role of advocate for the *pro se* litigant, nor does the mere fact of appearing *pro se*

alleviate the litigant's burden of presenting sufficient evidence to demonstrate a

genuine factual dispute that would allow him to survive summary judgment.  *DiCesare*

*v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993) ("Pro se litigants are subject to the same rules

of procedure that govern other litigants.").

### B.  Unexhausted Claims

1.  *Plaintiff failed to exhaust all of his claims against Defendants Chavez and Bradley,*
    *and most of his claims against Defendant Fralick.*[3]

As to Defendants Chavez, Bradley, and Fralick, the Magistrate Judge

recommended finding that Plaintiff had failed to exhaust his administrative remedies

because his grievances against these Defendants were directed at prison conditions

generally – not retaliation for Plaintiff's IPRA requests.  *Doc. 82* at 18.  Plaintiff asserts

that his grievances against these Defendants did indeed put the prison on notice of

alleged retaliatory conduct for his IPRA requests.  The Court disagrees.

Plaintiff correctly identifies *Kikumura v. Osagie* as setting forth the standards by

which the adequacy of a grievance is determined, but he relies on a portion of that

opinion that has little bearing on his case.  461 F.3d 1269 (10th Cir. 2006), *overruled on*

---

[3] The claims pertaining to Defendant Fralick in this section are those that were subject to the
administrative process through which prisoners are to file grievances.  Defendant Fralick also filed a
misconduct report against Plaintiff, which is considered non-grievable, and is subject to a separate
administrative process.  Thus, the claims pertaining to Defendant Fralick in this section address all of the
grievable conduct but not Defendant Fralick's filing a misconduct report, which is addressed in a later
section.  *See infra* Part VI.C.1.a.

*other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007), *as explained in Robbins v.*

*Oklahoma*, 519 F.3d 1242, 146-47 (10th Cir. 2008).  The Court reads *Kikumura* as standing

for the proposition that exhaustion requires, among other things, (1) that prisoners

"must provide enough information about the conduct of which they complain to allow

prison officials to take appropriate responsive measures," and (2) the conduct of which

they complain must be related to the claims they bring in federal court.  461 F.3d at

1282-85 (rejecting prison's argument that grievance must name each alleged wrongdoer

and holding that, absent notice that a grievance must "identify the wrongdoers[,] . . . a

grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison

officials with enough information to investigate and address the inmate's complaint

internally.").  While the Court does not doubt that the grievances Plaintiff brought

against these Defendants contained enough information relating to the complained of

conduct, Plaintiff cannot escape the fact that they do not relate to retaliation for his

IPRA requests.  *See, e.g., id.*, Ex. L at 3 (complaint against Defendant Chavez about

postage policy), 9 (complaint against Defendant Bradley about removing books from

library); Ex. B at 8 (complaint against Defendant Fralick for closing library on

weekends).  Thus, even assuming Plaintiff exhausted all of the grievances he filed

against Defendants Chavez, Bradley, and Fralick, Plaintiff's grievances are not

sufficiently related to his First Amendment claim of retaliation.[4]  *Kikumura*, 461 F.3d at

---

[4] Plaintiff did submit informal complaints against Defendant Bradley that could pertain to retaliation but

1285-86 (holding "vague reference to 'policy' was insufficient to notify prison officials that the injuries [giving rise to the plaintiff's Eight Amendment claim] might have been caused by inadequate training and disciplinary programs at the prison" because prison would not have had "a fair opportunity to resolve [the plaintiff's] complaint against [prison supervisors]. . .").

Furthermore, while Plaintiff correctly notes that the misconduct report filed by Defendant Bradley was subject to separate appeal process (*doc. 69*, Ex. K at 6), he failed to complete that process. *Id.*, Ex. C at 7-15 (documenting the disciplinary process and demonstrating Plaintiff failed to file an appeal).  Plaintiff asserts that "the Bradley 'Disciplinary Appeal Form' was not given to [P]laintiff."  *Doc. 85* at 11.  However, the assertion is insufficient to establish that he could not have appealed the decision had he tried.

Accordingly, the Court adopts the Magistrate Judge's recommended disposition for these Defendants and grants their request for summary judgment as to all of the claims against Defendants Chavez and Bradley, and most of the claims against Defendant Fralick.[5]

---

the record reflects that he did not file grievances and Plaintiff does not assert that he did.  *Doc. 69*, Exs. A, B, and L; *doc. 86* at 13-14

[5] *See infra* note 3.

2. *Plaintiff failed to exhaust his claim against Defendant Bravo for allegedly ordering or authorizing retaliation against him.*

The Magistrate Judge recommended finding that Plaintiff had failed to exhaust his administrative remedies as to Defendant Bravo because he had not pursued the available remedies through the appeal process. *Doc. 82* at 20.  In the PFRD, the Magistrate Judge concluded that Plaintiff had filed only one grievance alleging Defendant Bravo's involvement in retaliatory treatment and had failed to complete the process required to exhaust his administrative remedies. *Doc. 82* at 20.  The record reflects that the sole grievance on this matter was investigated, the Grievance Officer recommended that it be denied, the Warden/Designee agreed, and the decision was "mailed certified" on April 23, 2012, to Plaintiff, who had been transferred before the decision was rendered. *Doc. 69*, Ex. L at 28, Ex. I at 7 (reflecting that Plaintiff was transferred on March 21, 2013).  The record, however, does not contain an appeal for this grievance. *Id.*, Exs. A, B, and L.  Moreover, nowhere in Plaintiff's Complaint,[6] his Objections to the PFRD, or his Motion to Strike Bad Faith Affidavits does he assert that he appealed the decision regarding this grievance or that he filed any other grievances related to this matter. *See generally docs 20, 85, 86*.

Instead, Plaintiff argues that "[n]o records exist for this claimed 'mailing' [of the grievance to him]. . . [D]efendants did not include 'Step 5 - Departmental Appeal' on the

---

[6] While exhaustion need not be pleaded, Plaintiff has noted that the Court should treat his verified complaint as an affidavit and consider it for summary judgment purposes.

bogus Memorandum.  No appeal was 'available.'"  *Doc. 86* at 23.  By asserting that an

appeal was unavailable, Plaintiff concedes that none was filed.  Moreover, the argument

that no appeal was available because the grievance form in the record does not contain

the appeal section is meritless.  The grievance form tells inmates to read the applicable

policies for filing grievances, which outlines the entire process, including appeals, and

informs inmates that exhaustion requires appealing grievances.  *Doc. 69*, Ex. L at 3

("Please read policy/procedure *CD-150500* [Inmate Grievance Policy] before filing a

grievance"); Ex. K at 2 (Inmate Grievance Policy stating definition of "Exhaustion of

Administrative Remedies" is "[t]he completion of the grievance process through the

Department level appeal") 13-15 (Inmate Grievance Policy describing the appeal

process).  Moreover, Plaintiff asserts in his objections that he had appealed an earlier

grievance so he was aware of the appeal process.  *Doc. 86* at 10.  Finally, his assertion

that no record exists of the grievance being mailed to him is belied by the grievance

itself, which notes that it was mailed to him.

Because the record and Plaintiff's arguments establish that he did not appeal his

grievance against Defendant Bravo and because his argument that no appeal was

available falls short, the Court concludes that there is no genuine dispute over the fact

that he could have filed an appeal and simply did not.  By beginning the grievance

process but failing to file an appeal, Plaintiff is "barred from pursuing a § 1983 claim

under PLRA for failure to exhaust his administrative remedies."  *Jernigan v. Stuchell*,

304 F.3d 1030, 1032 (10th Cir. 2002).  Therefore, after considering Plaintiff's Amended

Complaint and his additional filings, the Court agrees that Plaintiff failed to exhaust his

administrative remedies against Defendant Bravo for this claim.

3.  *Under prison regulations, Plaintiff could not have grieved some of his claims.*

With respect to Defendant Bravo's allegedly retaliatory transfer, Plaintiff

correctly notes that transfers are non-grievable.  *Doc. 85* at 1.  The applicable prison

regulations state that "[a]ny matter involving a classification decision," is non-grievable.

*Doc. 69*, Ex. K at 6.  On its face, a classification decision may not appear to include

transfers, but other prison regulations referred to by Plaintiff in his objections establish

that transfers do indeed fall within the purview of classification decisions.  *See* New CD-

80100 – CD-80105.  Although a separate appeal process is available for some decisions,

Plaintiff's transfer does not appear to have been subject to such strictures.  *See infra* Part

VI.C.1.c.

Similarly, prison policies render "[a]ny matter involving disciplinary procedure

and findings" non-grievable,  *Doc. 69*, K at 6.  The allegedly retaliatory misconduct

report filed by Defendant Fralick was therefore subject to separate appeal process.  *Id.*

Accordingly, Plaintiff's failure to file grievances relating to those claims did not mean

that he failed to exhaust his administrative remedies.  Moreover, Plaintiff pursued the

disciplinary process through the appeal level with respect to Defendant Fralick.  *Doc.

69*, Ex. C at 16-24.

24

With respect to Defendant Rogers, Plaintiff's objections assert that he did indeed submit the grievance on time but that prison officials did not check the grievance mailbox on the day he submitted it, as required by prison regulations. *Doc. 86* at 11-13. Since the form was returned to him on timeliness grounds, he was not permitted to further pursue his administrative remedies. *Doc. 69*, Ex. K at 9 (requiring inmates to submit grievances within twenty days); *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) ("[A]n administrative remedy is not available under the PLRA if prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedies") (internal quotation marks omitted)).

## C. Claims Where Exhaustion Was Unavailable

Thus, Plaintiff has demonstrated that no administrative remedies were available for his claim against Defendant Bravo for his alleged retaliatory transfer, his claims regarding a misconduct report filed by Defendant Fralick, and for his grievance against Defendant Bravo that Plaintiff contests was timely submitted, but was returned as untimely. These conclusions, however, do not end the matter because Defendants' *Martinez* Report also sought dismissal of Plaintiff's First Amendment Retaliation claims on their merits. *See generally doc. 69*.

To succeed on a First Amendment retaliation claim, Plaintiff must establish the following:

(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that

25

would chill a person of ordinary firmness from continuing to engage in
that activity; and (3) that the defendant's adverse action was substantially
motivated as a response to the plaintiff's exercise of constitutionally
protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).  Under the second element,

the "standard for evaluating that chilling effect on speech is objective, rather than

subjective ... a trivial or de minimis injury will not support a retaliatory prosecution

claim." *Eaton v. Meneley*, 379 F.3d 949, 954–55 (10th Cir.2004) (internal quotation

omitted).  Under the third element, a plaintiff "must prove that 'but for' the retaliatory

motive, the incidents to which he refers, including the disciplinary action, would not

have taken place."  *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990).

1. *Plaintiff has failed to raise a triable issue of fact as to the alleged retaliatory motive of*
   *Defendants Fralick, Bravo, and Rogers.*

As noted above, to succeed on a retaliation claim, Plaintiff "must prove that 'but

for' the retaliatory motive, the incidents to which he refers, including the disciplinary

action, would not have taken place."  *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir.

1990).  *Smith v. Maschner* is instructive.  *Id.* There, the Tenth Circuit reversed an award

of summary judgment against a prisoner where "[t]he circumstantial evidence . . . lead[]

[the court] to conclude that a jury could reasonably find that defendants retaliated

against Smith for the exercise of his [First Amendment] right of access to the courts."

899 F.2d at 949.  In that case, as Smith was leaving to court for a suit regarding the

prison, prison officials required him to surrender his brief case on two occasions so they

26

could search it.  *Id.* at 945.  When he refused the second time, they confiscated the briefcase.  *Id.* at 945.  Once in court, Smith informed the judge he needed his briefcase to proceed and the judge required the prison to retrieve it.  *Id.*  When he arrived back at the prison, Smith was immediately placed in segregation and informed of disciplinary charges against him.  *Id.*  He was ultimately with what the Tenth Circuit characterized as "a sizeable loss of good time credits."  *Id.*

In deciding a triable issue of fact remained regarding retaliatory motive, the Tenth Circuit noted the "indisputably close proximity" between the protected activity and alleged retaliation.  Additionally, Smith had presented affidavits from two other prisoners which supported an inference of retaliatory motive.  *Id.* at 948.  One prisoner asserted he had been segregated and then transferred to prevent him from serving as a witness in Smith's lawsuit.  *Id.*  The other asserted he had been removed from employment in the library for helping Smith while Smith was in segregation.  Based on the above, the Court concluded that there was a triable issue of fact as to retaliatory motive.  With the circumstances of *Smith* in mind, the Court turns to the allegations against Defendants Bravo and Fralick.

a.  <u>Defendant Fralick did not act with a retaliatory motive</u>

Plaintiff filed an IPRA request concerning Defendant Fralick's job description and professional qualifications on January 21, 2013.  *Doc. 20* at 106.  That request was responded to by Harrison Wheeler.  *Id.* at 66-68.  Defendant Fralick's misconduct report

was filed more than a month later on February 28, 2013.  *Id.* at 108.  The report stated

that Plaintiff had become aggressive after Defendant Fralick refused to give Plaintiff a

policy that Plaintiff was permitted to view and had previously viewed.  *Id.* at 110.

Defendant Fralick called for assistance and Plaintiff was removed from the library,

albeit without physical contact.  *Doc. 69*, Ex. C at 16.  Plaintiff's appeal asserted that his

being disciplined was in retaliation for his "IPRA suit in federal court."  *Id.* at 22.

    Nothing in the record demonstrates that Defendant Fralick was aware of the

IPRA request Plaintiff had made on January 21, 2013.  Moreover, the misconduct report

was preceded by an informal complaint by Plaintiff against Defendant Fralick in which

Plaintiff asserted Defendant Fralick closed the library early and had been "observed by

[P]laintiff and other inmates getting a haircut at the Staff Barbershop across the hall."

*Doc. 20* at 107.  Plaintiff further alleges that he was in the library when Defendant

Fralick "went off" after being confronted by a supervisor about the incident.  *Doc. 20* at

*108*.  On February 11, 2015, Plaintiff filed a grievance "concerning closure of the Library

so the 'Library Coordinator' [could] attend to his personal grooming."  *Id.*  On February

28, 2015, Defendant Fralick filed his misconduct report.  *Id.*

    Given that Defendant Fralick does not appear to have been aware of the IPRA

request concerning him, that the misconduct report was filed more than a month after

the IPRA request was made, and that there was an intervening conflict between

Defendant Fralick and Plaintiff, the circumstances are insufficient to establish

retaliatory motive based on Plaintiff's IPRA requests.[7]  *See Maschner*, 899 F.2d at 949-50.

---

[7] This conclusion also dooms Plaintiff's claim that Defendant Bravo's refusal to overturn the action on appeal somehow ratified the retaliatory conduct.

b.  <u>Plaintiff's IPRA request was not a but-for cause of Defendant Rogers yelling at him.</u>

Five days after Plaintiff filed an IPRA request requesting information about Defendant Rogers qualifications and ordering the confiscation of property "from tables at GCCF, housing unit 2A," Defendant Rogers summoned Plaintiff to his office.  *Doc. 20* at 60.  Defendant Rogers then proceeded to scream obscenities and threats at Plaintiff such as, "You're a pussy," "Come around this desk and see what happens to you," "I'll take you out of here in handcuffs," and "I'll lock down your whole pod, and then I'll go cell-by-cell, and tell everyone there that you're responsible for it."  *Doc. 20* at 95-96. Defendant Rogers kept "[P]laintiff's copy of the GEO-County contract, and the County-NMCD contract that [P]laintiff obtained under the IPRA, along with correspondence to plaintiff from defendant Wheeler" to make copies.  *Id.* at 96.  He also kept Plaintiff's "folder containing the Complaint in this action."  *Id.*  Defendant Rogers released Plaintiff about thirty minutes after summoning him, he returned the contracts about seven and a half hours later, and he returned Plaintiff's folder about three days after the incident.  *Id.*

In describing this incident Plaintiff states, "In the following paragraphs, references to 'at that time' mean the date and place identified here."  *Doc. 20* at 94. The date identified and the place identified was Defendant Rogers's office on December 23, 2012.  *Doc. 20* at 94.  Of the next seventeen paragraphs, each begins with "at that time" except for one: the paragraph that states "When plaintiff told [Defendant Rogers] of the

30

IPRA request for his qualifications, Rogers sneered, 'Yeh, I heard all about it.'" *Id.* at 94-97.

The twelve preceding paragraphs before this allegation is made all begin with "at that time." *Id.* at 95-96. In the immediate context in which the IPRA statement was made, the Amended Complaint reads:

> [¶ 13] At that time, plaintiff's folder containing the Complaint in this action was also kept by Rogers; when plaintiff was finally able to retrieve the folder at 3:36 p.m. on 28 December 2012, Rogers sneered, 'I don't need this garbage!'

> [¶ 14] When plaintiff told him of the IPRA request for his qualifications, Rogers sneered, 'Yeh, I heard all about it.'

> [¶ 15] At that time, when plaintiff told Rogers he would grievance him for his screaming tirade and threats described above, Rogers screamed, 'Fuck you!,' and corked his elbow while giving plaintiff an obscene gesture commonly called, 'the finger.'

*Id.* at 96.  The next two paragraphs also begin, at that time.  *Id.* at 96-97.  Thus, it does not appear that Plaintiff apprised Defendant Roger's of his IPRA request before being yelled at.

Furthermore, the statement itself shows that Plaintiff's IPRA request concerning Defendant Rogers was not a but-for cause of Defendant Rogers's verbally abusing Plaintiff.  Had Defendant Rogers been screaming at Plaintiff because of his IPRA request, he would not likely have said "Yeh, I heard all about it." *Id.* at 96.  And, the fact that Plaintiff apprised Defendant Rogers of the IPRA requests suggests that he was screaming at Plaintiff for some other reason.

Plaintiff's allegation of retaliatory motive hinges on the temporal proximity of the IPRA request and Defendant Rogers yelling at him.  However, the allegations do not establish that Defendant Rogers was aware of the IPRA request when he began yelling at him, the IPRA request came up only after Plaintiff brought it up, and Defendant Rogers's reaction to Plaintiff's statement indicates that Defendant Rogers was yelling at Plaintiff for some other reason.  For these reasons, a reasonable inference cannot be made that Plaintiff's IPRA request was a but-for cause of Defendant Rogers yelling at him.  *See Maschner*, 899 F.2d at 949-50.  Therefore, no issue of genuine fact exists and his claim of retaliation against Defendant Rogers fails.

 c. <u>Defendant Bravo did not transfer Plaintiff</u>

Defendants' *Martinez* Report argues that Defendant Bravo was not responsible for transferring Plaintiff and therefore could not have retaliated against him.  *Doc. 69*, at 28.  The record before the Court bears that out.  Plaintiff had been in location "GU1 D111 T" at the Guadalupe County Correctional Facility (GCCF) since November 29, 2012, and had remained there until his transfer to the Southern New Mexico Correctional Facility (SNMCF) on March 21, 2013.  *Doc. 69*, Ex. I at 7.  The records submitted by Defendants reflect that during this time frame, Plaintiff was given notice on December 12, 2012, of a classification hearing to take place on January 14, 2013.  *Id.*, Ex. I at 5.  The notice had four boxes that could be checked to indicate the purpose of the hearing: (1) "Transfer/Custody Review"; (2) "iTap/Tap Review"; (3) Mandatory 6

month/12 month Review"; and (4) "Discretionary Review." *Id.* Only

"Transfer/Custody Review" was checked. *Id.* The comments section immediately

beneath the boxes contained the notation, "T.C. Lateral." *Id.* Plaintiff indicated his wish

to appear at the hearing and signed the form. *Id.* On January 14, 2013, the hearing took

place at which the committee recommended approving a "lateral transfer pending CBC

[Classification Bureau Chief][8] approval and requesting WNMCF." *Id.*, Ex. I at 6.[9]

There are no further records in the file addressing a "lateral transfer" between

January 14, 2013, and the date Plaintiff was transferred to SNMCF, so these exhibits

appear to document that transfer.  Critically, the records reflect that Defendant Bravo

did not participate in the hearing and did not make the decision to transfer Plaintiff.

*Doc. 69*, Ex. I at 5-7.  This is consistent with prison regulations establishing that

Defendant Bravo did not have authority over Plaintiff's transfer.  The only section in

which "lateral transfers" are discussed is in policy number CD-080105(A)(6), which

states that "[l]ateral transfers of inmates may be made any time to serve the interests of

the NMCD.  The Classification Bureau must approve a lateral transfer."  CD-

080105(A)(6).   The process of the Classification Committee making a recommendation

that is subject to approval by the Classification Bureau Chief is consistent with these

regulations.  Further still, Defendant Bravo's affidavit states that "[t]he ultimate power

and discretion to make [transfer] decisions lies with the NMCD Classification Bureau

---

[8] *See doc. 69*, Ex. J at 1 (Colleen McCarney is the NMCD "Classifications Bureau Chief ('CBC')").
[9] The hearing also conducted a "G.T. Review/Rescind."  *Doc. 69*, Ex. I at 6.

Chief ('CBC')" (*Doc. 69*, Ex. F at 3).  Colleen McCarney, the CBC, also stated that

"Wardens of NMCD facilities, including Warden Bravo, lack the authority to

unilaterally transfer inmates in the custody of NMCD.  Inmate transfers are ultimately

approved and facilitated by my office at NMCD." *Id.*, Ex. J at 1.

      In response to Defendant Bravo's affidavit, Plaintiff asserted "[w]hoever

exercised authority for the transfer has been hidden."  *Doc. 85* at 10 (emphasis omitted).

In response to Ms. McCarney's assertion that she retained discretion over transfers,

Plaintiff states "Defendants have concealed the records of who 'initiated,' approved,'

and 'facilitated' plaintiff's transfer to SNMCF."  *Id.* at 11.  Yet the record reflects that it

was initiated by the Classification Committee subject to approval of Ms. McCarney,

which, again, is consistent with prison regulations.  Furthermore, the record reflects that

Plaintiff himself chose to, and did in fact, attend the hearing.  *Doc. 69*, Ex. I at 6.

      Thus, although Plaintiff could not have exhausted administrative remedies for

his transfer, no genuine dispute exists over whether Defendant Bravo was the one

responsible for that transfer.  Because Defendant Bravo did not make the decision to

transfer Plaintiff, Plaintiff's retaliation claim against him fails.  *See Shero v. City of Grove*,

510 F.3d 1196, 1203 (10th Cir. 2007) (plaintiff must show that action was "substantially

motivated as a response to the plaintiff's exercise of constitutionally protected

conduct.").

## VII.   CONCLUSION

As set forth herein, I adopt in part the Magistrate Judge's PRFD (*doc. 82*) and dismiss most of Plaintiff's claims on exhaustion grounds.  I also adopt the recommendation regarding Plaintiff's Motion to Strike the *Martinez* Report (*doc. 77*) in its entirety and therefore deny that motion.  On initial review, I deny Plaintiff's second Motion to Vacate (*doc. 76*) and his Motion to Strike Bad Faith Affidavits (*doc. 85*).  As to the portions of the Magistrate Judge's recommendations on Defendants' *Martinez* Report that I do not adopt, I nevertheless conclude that Defendants' are entitled to summary judgment for the reasons outlined in this order and I therefore grant their motion.  Therefore, all Plaintiff's remaining claims are hereby dismissed with prejudice.

IT IS SO ORDERED this 29th day of September, 2015.


_____
CHIEF UNITED STATES DISTRICT JUDGE